```
           IN THE UNITED STATES DISTRICT COURT FOR
             THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      :
                              :
     v.                       :
                              : No. 4:23-CR-159
KATRINA MACLEAN,              :
                              :
          Defendant.          :(Chief Judge Brann)
```

**BRIEF IN SUPPORT OF MOTION TO DISMISS INDICTMENT**

Defendant Katrina Maclean, by and through her undersigned counsel, hereby submits this Brief in support of her Motion to Dismiss the Indictment.

**PRELIMINARY STATEMENT**

Katrina Maclean is a forty-five-year-old, happily married wife and loving mother of two minor children.  She hikes and attends museums and other local New England sites on the weekends with her family.  She has volunteered in the local elementary school, is an active member of her community and has no criminal history of any kind.  And Ms. Maclean also has a somewhat unusual interest: she is part of a legal, nationwide oddities community that collects body parts. While not exactly mainstream, that oddities market is extensive and not uncommon, particularly in Ms. Maclean's home town of Salem, Massachusetts, a community with a well-known penchant for the unusual.  Yet perhaps due to the sensationalism surrounding this case arising from the morbid

nature of its circumstances, Ms. Maclean has been charged with crimes based upon her lawful activities that do not exist under federal law. This motion, therefore, seeks the dismissal of this case against her and end a prosecution which should have never been brought in this Court.[1]

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 13, 2023, an indictment was returned charging Ms. Maclean and three other individuals with one count each of Conspiracy, pursuant to 18 U.S.C. § 371 (Count 1) and Interstate Transport of Stolen Goods, pursuant to 18 U.S.C. § 2314, § 2 (Count 3).[2] In substance, the Indictment alleged that Cedric Lodge, who was the lab manager of the Harvard Medical School morgue ("Harvard"), stole dissected portions of donated human cadavers used for medical school education, teaching and research and sold them to oddity collectors, including Ms. Maclean. The Indictment further alleges that Ms. Maclean sold various human remains she purchased from Mr. Lodge.

On June 14, 2023, Ms. Maclean was arrested at her home in Salem, Massachusetts. On that same date, she appeared for

---

[1] There is no doubt an emotional aspect to the facts of this case and circumstances. Yet, as this Court has previously recognized, the law must control. United States v. Pauley, No. 4:23-CR-163, 2024 WL 3939557, at *1 (M.D. Pa. Aug. 26, 2024).

[2] 18 U.S.C. § 2314 is commonly known as the National Stolen Property Act.

2

her initial appearance in federal court in the District of Massachusetts and was released on pre-trial supervision and other various conditions. She was ordered to appear for arraignment in the Middle District of Pennsylvania.

On June 27, 2023, Ms. Maclean appeared for arraignment in the Middle District of Pennsylvania, entered a not guilty plea and was again released on the same pre-trial conditions. A trial date is pending.

Finally, on March 3, 2025, Ms. Maclean filed a motion to dismiss the Indictment. This brief is being submitted in further support of that motion.

**ARGUMENT**

**I.**

**THE COURT SHOULD DISMISS BOTH COUNTS OF THE INDICTMENT BECAUSE THEY ARE LEGALLY INSUFFICIENT BECAUSE HUMAN REMAINS DO NOT CONSTITUTE "GOODS, WARES, MERCHANDISE, SECURITIES, OR MONEY" WITHIN THE NATIONAL STOLEN PROPERTY ACT**

Federal crimes are "solely creatures of statute." Dowling v. United States, 473 U.S. 207, 213 (1985). As a result, a defendant may move to dismiss a count for failure to state an offense under the statute pursuant to Federal Rule of Criminal Procedure 12(b)(3). See Russell v. United States, 369 U.S. 749, 760-61 (1962). As such, a district court may review the sufficiency of an indictment "to ensure that legally deficient charges do not go to a jury." United States v. Huet, 665 F.3d

3

588, 595 (3d Cir. 2012), abrogated on other grounds, United States v. Hill, 98 F.4th 473 (3d Cir. 2024). An indictment "fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." United States v. Bergrin, 650 F.3d 257, 264 (3d Cir. 2011).

Moreover, when evaluating a motion to dismiss an indictment, the court must determine whether "the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict." Id. at 268. Rule 12(b)(3) further authorizes dismissal if the allegations in an indictment "do not suffice to charge an offense." United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007). Thus, the indictment must allege specific facts that fall within the scope of the relevant criminal statute. Id.

The National Stolen Property Act (the "Act"), codified in 18 U.S.C. § 2314, contains an element that the defendant transported "goods, wares, [or] merchandise" in interstate or foreign commerce. Dowling, 473 U.S. at 214. Goods, wares, and merchandise within this statute are "a general and comprehensive designation of such personal property or chattels as are ordinarily a subject of commerce." United States v. Seagraves, 265 F.2d 876, 880 (3d Cir. 1959) (quoting Black's Law Dictionary 823 (4th ed. 1951)); see also American Cyanamid Co. v. Sharff,

4

309 F.2d 790 (3d Cir. 1962) (same).  Courts have used a two-part test to determine whether items are goods, wares or merchandise within the meaning of the Act.  See United States v. Smith, 686 F.2d 234, 241 (5th Cir. 1982) (interpreting Seagraves). Initially, the item must be a tangible object in the nature of personal property or chattels.  Id. at 241 ("Where no tangible objects wee ever taken or transported, a court would be hard pressed to conclude that 'goods' had been stolen and transported within the meaning of § 2314.").  Next, the item must "ordinarily be the subject of commerce."  Id.  Applying these principles, the human remains removed from the Harvard morgue do not constitute goods, wares and merchandise within the Act.

At the outset, it bears highlighting, there are no prior cases that have ever adopted or attempted to invoke the Government's creative reading of the Act to base a similar federal criminal prosecution.  The reason for that is plain: it simply does not apply.  Moreover, statutes exist under various state laws that may apply to human remains, including Massachusetts, where the purported crimes originated.  See Mass. Gen. Law, Chp. 272 § 72 (2024)("Buying, Selling or Possessing Dead Bodies").[3]  Thus, state laws needed to be statutorily

---

[3]  Whether dissected human remains would fall within the statute is unclear.  However, Massachusetts is only one state with similar state laws.  See Abby Patkin, Is It Legal To Sell Human Remains? Harvard Morgue Scandal Raises Questions, Boston.com (Jun. 16,

created in order to carve out crimes where human remains are involved, which by extension, establishes that such remains do not fall under the broader general category of "goods" or "property" as the Government innovatively suggests.

Next, the Act's language requires that the object stolen must be of the nature of personal property or chattel.  The Supreme Court has agreed that cases brought under the Act "have always involved physical goods, wares, [or] merchandise . . . [and this] basic elements comports with the common-sense meaning of the statutory language."  Dowling, 473 U.S. at 216.  Moreover, it is well-settled that statutory construction begins "with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."  United States v. Albertini, 472 U.S. 675, 680 (1985).  "When assessing the reach of a federal criminal statute, [courts] pay close heed to language, legislative history, and the purpose in order strictly to determine the scope of the conduct the enactment forbids."  Dowling, 473 U.S. at 213.  Further, "when choice has to be made between two readings of what Congress has made a crime, it is appropriate, before [the court] choose[s] the harsher alternative, to require

---

2023), https://www.boston.com/news/crime/2023/06/16/is-it-legal-to-sell-human-remains-harvard-morgue-scandal-raises-questions.

that Congress has spoken in language that is clear and definite. Id. at 214.

For more than two centuries, courts and academics alike have concluded that human remains are not tangible property and have never been considered property. See Wiliam Blackstone, Commentaries on the Law of England, Book the Second 428 (London: A. Strahan, 1825) ("[T]hough the heir has a property in the monuments and escutcheons of his ancestors, yet he has none in their bodies and ashes."); Tanya D. Marsh, The Law of Human Remains 11 (2015) (noting "it is a fundamental doctrine of U.S. common law that there is no property in a human corpse."); Wynkoop v. Wynkoop, 42 Pa. 293, 298 (Pa. 1861) ("There is no right of property in such remains, from their very nature.  No authority for such claim can be shown in any civilized community from the time of Adam."); Pierce v. Proprietors of Swan Point Cemetery, 10 R.I. 227, 237 (1872) ("That there is no right or property in a dead body, using the word in its ordinary sense, may well be admitted."); Restatement (Third) of Torts: Miscellaneous Provisions § 1_48 E (The Right of Sepulcher) ("Human remains are not property"); People v. Reid, 201 Cal. Rptr. 3d 295, 299 (Ct. App. 2016) ("[H]uman remains have not been treated as property under the law."); Culpepper v. Pearl Street Bldg., Inc., 877 P.2d 877, 880-82 (Colo. 1994) ("Clearly, there can be no property right in a dead body in a commercial sense, since a dead body cannot be

7

bartered or sold" . . . "We formally reject the fictional theory that a property right exists in a dead body that would support an action for conversion."); Cochran v. Securitas Sec. Servs. USA, Inc., 93 N.E.3d 493, 497 (Ill. 2017) ("[I]n the ordinary sense, there is no property right in a dead body"); Boorman v. Nevada Mem'l Cremation Soc'y, 235 P.3d 4, 9 (Nev. 2010) ("[W]e cannot conclude that there is a property right in a deceased human body or its remains."); People v. Gayton, 919 N.Y.S.2d 616, 617 (App. Div. 2011) ("Although the interest of next of kin in the bodies and body parts of their decedents may deserve legal protection, such rights and interests do not, under the current law, qualify as property."); State v. Quist, 910 N.W.2d 900, 903 (S.D. 2018) ("[A] decedent's body is not property that can owned."); see also see also Brian Grow and John Shiffman, Cashing In On The Donated Dead, The Body Trade, Reuters, Oct. 2017 (investigate report noting "in almost every state it's legal to sell the human remains of adults"), available at https://www.reuters.com/investigates/special-report/usa-bodies-qanda/#:~:text=A%3A%20It's%20illegal%20to%20sell,the%20human%20remains%20of%20adults.

 Consequently, since human remains are not property, it cannot be a good, ware or merchandise within the meaning of the Act. Therefore, this Indictment must be dismissed.  See In re Vericker, 446 F.2d 244 (2d Cir. 1971) (stolen FBI documents did not qualify

8

as property under the National Stolen Property Act); <u>United States v. Zhang</u>, 995 F. Supp. 2d 340 (E.D. Pa. 2014) (count dismissed because digital files stolen from employer did not constitute "goods, wares or merchandise" under § 2314).

## II.

### THE COURT SHOULD DISMISS BOTH COUNTS OF THE INDICTMENT BECAUSE THEY ARE LEGALLY INSUFFICIENT BECAUSE THE PROPERTY IN QUESTION DID NOT SATISFY THE $5,000 JURISDICTIONAL AMOUNT

In addition to the property element, the Act also requires that the government prove that the stolen property being transported has a value of $5,000 or more. <u>See</u> 18 U.S.C. § 2314. The $5,000 threshold requirement is jurisdictional and reflects a congressional intent to limit federal jurisdiction to cases involving stolen goods having substantial value and is an essential element of § 2314. <u>See</u> <u>United States v. Markus</u>, 721 F.2d 442 (3d Cir. 1983) (affirming dismissal of indictment where the stolen checks did not exceed $5,000). The jurisdiction amount requirement serves two important functions: (i) it limits federal jurisdiction to "interstate transportation of stolen goods having substantial value" and (ii) it prevents "overtaxing the resources of the Department of Justice." <u>United States v. Wentz</u>, 800 F.2d 1325, 1326 (4th Cir. 1986) (internal citation omitted). "Cases involving stolen property of less value remain the responsibility of the states." <u>Id.</u> Therefore, to obtain a conviction under the

9

Act, the Government must prove the minimum value as an essential element of the offense. See Markus, 721 F.2d at 443. Furthermore, the stolen property cannot be aggregated to satisfy the $5,000 jurisdictional element. See id. at 444 (dismissal of indictment proper because stolen property could not be aggregated to satisfy the jurisdictional amount). Similarly, the Indictment here failed to satisfy this essential jurisdictional element and therefore it must be dismissed.

First, the alleged stolen human remains do not have any compensable value generally to satisfy the $5,000 threshold. Human remains generally do not have any monetary value. See Shults v. United States, 995 F. Supp. 1270, 1276 (D. Kan. 1998) (noting "the partial remains of a human body [] has no compensable value"). The United States Sentencing Guidelines define "loss" as the "fair market value of the property unlawfully taken." U.S.S.G. § 2B1.1, cmt. N.3(B)(i). Similarly, 18 U.S.C. § 2311 defines "value" as "face, par or, market value." At least in the related sentencing context, the Government has previously conceded that the alleged stolen human remains did not have any pecuniary value. See United States v. Pauley, No. 4:23-CR-63, Hr'g Tr., Aug. 6, 2024, at 5-6.

Second, the Government does not allege anywhere in its Indictment that any of the individual purported stolen human remains transported or transmitted by Ms. Maclean, standing alone,

10

satisfied the $5,000 threshold.  Count 3 does not provide any details about what specific stolen human remains were actually transported, let alone identify their individual values.[4] Furthermore, it cannot be seriously contested that the Government's $5,000 jurisdictional amount was achieved by aggregating the total amount of loss.  Indeed, the Government has previously conceded this critical point.  See United States v. Pauley, No. 4:23-CR-163, Plea Hr'g Tr. at 22, Sept. 7, 2023 (Government providing statement of facts in support of the plea and stating "[t]he *aggregate* value of the stolen remains transported through interstate commerce was in excess of $5,000.") (emphasis added).  That is forbidden and does not satisfy the jurisdictional element.  The charges should be dismissed.  See Markus, 721 F.2d 442; United States v. Lagerquist, 724 F.2d 693 (8th Cir. 1984) (indictment dismissed because the property stolen had a combined value of $5,000 and no check standing alone satisfied the jurisdictional amount).

### III.

**THE INDICTMENT SHOULD BE DISMISSED FOR FAILING TO PRESENT COMPETENT FACTS BEFORE THE GRAND JURY TO SUSTAIN THE INDICTMENT**

The Fifth Amendment to the United States Constitution provides that no person can be federally prosecuted for a felony

---

[4] The discovery reveals that at no time did Ms. Maclean purchase, sell or transfer any individual item that would have exceeded $5,000.

11

without having been indicted by a grand jury. See U.S. Const., Amend. V. The grand jury has "been regarded as the primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuse and the accused . . . ." Wood v. Georgia, 370 U.S. 375, 390 (1962). Whether there exists "sufficient evidence" to indict does not absolve the government of its responsibility to ensure that justice in grand jury proceedings is duly executed. See United States v. Williams, 504 U.S. 36 (1992) (discussing prosecutor's duty to protect fundamental fairness of grand jury proceedings). Before returning an indictment, the grand jury must be satisfied from the evidence before it, that there is probable cause to believe that a crime has been committed and the defendant committed it. See United States v. R. Enters., Inc., 498 U.S. 292, 298 (1991). The grand jury must vote on the actual indictment that is returned. See Fed. R. Crim. P. 6; Rule 6(b)(2) permits a motion to dismiss an indictment based upon an objection to the grand jury generally.

A constitutionally adequate indictment must "sufficiently apprise the defendant of what he must be prepared to meet." Russell v. United States, 369 U.S. 749, 763 (1962). The Government is required under the Sixth Amendment to inform the accused of the nature and cause of the accusation. The accusation must be contained in an indictment by a grand jury and the

12

defendant cannot be tried on "charges that are not made in the indictment against him." Stirone v. United States, 361 U.S. 212, 217 (1960).

Here, because of the secret nature of the grand jury proceedings, Ms. Maclean has no definite way to know what evidence the Government presented. However, as set forth above, the Indictment in this case seriously misrepresents the facts and the law, or otherwise omitted other crucial facts, as to what constitutes property and the monetary jurisdictional prerequisites. These glaring deficiencies highlight the necessity for discovering exactly what the Government presented to the grand jury in terms of the evidence and legal instructions. Indeed, the grand jury's inability to determine the case based on accurate facts and law, vitiated their decision to indict. Prejudice should be presumed and the Indictment dismissed on this basis. See, e.g., Bank of Novia Scotia v. United States, 487 U.S. 250, 256 (1988) (Supreme Court affirming reversal of district court's dismissal of indictment due to violations of Rule 6, but reiterated that dismissal is appropriate if the "the violations substantially influenced the grand jury's decision to indict."); United States v. Brito, 907 F.2d 392 (2d Cir. 1990) (recognizing court's supervisory power to dismiss indictment where prosecutor misled or misinformed grand jury); United States v. Breslin, 916 F. Supp. 438 (E.D. Pa. 1996) (same).

13

Alternatively, Ms. Maclean requests that pursuant to Rule 6(e)(3)(E) of the Federal Rules of Criminal Procedure, that the Court order the Government to produce grand jury transcripts to the defense, or permit counsel for Ms. Maclean to inspect the minutes of the grand jury proceedings.  As the Third Circuit has explained:

> For while in theory a trial provides thee defendant with a full opportunity to contest and disprove the charges against him, in practice, the handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo.  Where the potential for abuse is so great, and the consequences of a mistaken indictment so serious, the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened.

<u>United States v. Serubo</u>, 604 F.2d 807, 817 (3d Cir. 1979).

Consequently, district courts must be vigilant to preserve the functions of the grand jury as the safeguard of any impropriety by the government in the grand jury.  <u>See</u> <u>id.</u> (granting defendant's right to review the undisclosed transcripts of grand jury); <u>see</u> <u>also</u> <u>United States v. Birdman</u>, 602 F.2d 547, 559 (3d Cir. 1979) (court recognizing the supervisory powers of the court in preserving the appearance and fair practice before the grand jury); <u>United States v. Plummer</u>, 941 F.2d 799 (9th Cir. 1991) (secrecy of grand jury proceedings will be lifted where desired material will avoid possible injustice and need for disclosure is greater than need for secrecy).

14

**CONCLUSION**

For all of the foregoing reasons, Ms. Maclean requests that the Indictment be dismissed with prejudice.[5]

Dated:    March 3, 2025

                                      MIELE & RYMSZA, P.C.

                                      By:   s/Edward J. Rymsza
                                              Edward J. Rymsza, Esq.
                                              Pa. I.D. No. 82911
                                              Attorney for Defendant
                                              125 East Third Street
                                              Williamsport, PA  17701
                                              (570) 322-2113
                                              (570) 322-8813 (fax)
                                              Rymsza@comcast.net

---

[5] Because the substantive acts in Count 3 forms the basis for the § 371 Count, it must similarly be dismissed. (Doc. 1, at 4-5). In addition, it is worth noting that the Supreme Court has warned that a court must review indictments under 18 U.S.C. § 371 narrowly "because of the possibility, inherent in a criminal conspiracy charge, that its wide net may ensnare the innocent as well as the culpable." Dennis v. United States, 384 U.S. 855, 860 (1966). As a result, conduct can be prosecuted under § 371 only if "the defendant's conduct 'plainly and unmistakably' falls with the proscription of the statute." United States v. Gradwell, 243 U.S. 476, 485 (1917).

15

**CERTIFICATE OF SERVICE**

    I, Edward J. Rymsza, Esq., hereby certify that on this 3d day of March 2025, I served the foregoing Brief in Support of Motion to Dismiss Indictment upon Sean Camoni, Esq. by electronic mail.

Dated:   March 3, 2025

                            MIELE & RYMSZA, P.C.

                          By:   s/ Edward J. Rymsza
                                 Edward J. Rymsza, Esq.
                                 Pa. I.D. No. 82911
                                 Attorney for Defendant
                                 125 East Third Street
                                 Williamsport, PA  17701
                                 (570) 322-2113
                                 (570) 322-8813 (facsimile)
                                 Rymsza@comcast.net